IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Mickey R. Brooks, | ) Civil Action No. 9:09-cv-2691-RMG-BM |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| Michael J. Astrue, Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff filed this action seeking judicial review of a final decision of Defendant Commissioner of Social Security denying Plaintiff's application for social security benefits. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to a Magistrate Judge for pretrial handling. As detailed herein, this Court adopts the Report and Recommendation of the Magistrate Judge and affirms the decision to deny benefits.

## Background

The Magistrate Judge issued a Report and Recommendation recommending that the decision of the Commissioner denying benefits be affirmed. (Dkt. No. 11). Plaintiff has objected to the R & R. (Dkt. No. 13).

## Standard of Review

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of those

1

portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's

findings of fact are not binding, however, if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987).

## Law/Analysis

This Court has reviewed the Record, the Magistrate's Report and Recommendation, and Plaintiff's objections *de* novo. Having done so, this Court has explained below why affirmance is warranted.

### A.    Dr. LeBlond

Plaintiff's first alleged error involves the ALJ's rejection of the opinion of Dr. LeBlond that Plaintiff was incapable of work at even a sedentary level. (R. p. 711). The ALJ assigned little weight to Dr. LeBlond's statement as to the Plaintiff's limitations, finding that his opinion was inconsistent with the results of Dr. LeBlond's own physical examinations and diagnostic findings, as well as with the other substantial evidence in the case record. (R.p. 36). From a review of the Record no reversible error in the ALJ's treatment of the findings and opinion of Dr. LeBlond can be found.

The medical record prior to Plaintiff's (amended) disability onset date reflects that Plaintiff injured his back and wrist when he fell off of a roof in October 1993, and then sustained a radius fracture when he fell off of a ladder in 1998, an injury which required open reduction internal fixation surgery. (*See* R.pp. 213, 311, 316). However, medical examinations and diagnostic results following these events consistently reflect that Plaintiff had only mild residuals with only a ten percent (10%) impairment rating for his back and right arm following maximum medical improvement. (R.pp. 431, 459, 489, 550-553, 555-556, 567, 597-598). These medical records also reflect that Plaintiff was suspected of exhibiting pain behavior out of proportion to what would be expected from

3

his objective findings, and that he was having problems with alcohol and substance abuse to the extent that he was even discharged by one physician for refusing to bring in his medications to be counted and for not following his drug contract. (R.pp. 490-491, 548 549, 566).

Plaintiff first saw Dr. LeBlond for an outpatient physical evaluation on April 28, 2005, at which time Plaintiff reported that, although he claimed his pain was "severe", he had not seen any physician for his pain for a year and one half to two years. Dr. LeBlond noted that on examination Plaintiff exhibited "give-way weakness" in his extremities with decreased range of motion, and that Plaintiff was "crying during most of the interview and exam" because of claimed pain. However, Plaintiff's extremities exhibited no cyanosis, clubbing, or edema, and there was no wasting. Dr. LeBlond started Plaintiff on medication and scheduled an MRI. (R.pp. 600-601). The MRI was thereafter conducted on May 7, 2005, which found only mild degenerative disc disease, "very subtle" bulging annules without nerve root compromise evident, a "subtle" facet atrophy at this level on the right, with no disc herniations being evident. (R.p. 598). When Plaintiff was seen for a followup examination by Dr. LeBlond on May 13, 2005, he described his pain as being "quite severe" and 10/10 on a ten point scale, notwithstanding the minimal MRI findings.

Dr. LeBlond continued to see Plaintiff after his amended disability onset date, with his examination records consistently showing that Plaintiff had full strength, intact sensation, decreased but equal reflexes, and negative straight leg raising test with no muscle atrophy. These records also note that Plaintiff was often times noncompliant with Dr. LeBlond's recommendations, that he would exhibit "give-away weakness" on

examination, and that he would exhibit significant guarding and facial grimacing. On September 8, 2006, Dr. LeBlond opined that Plaintiff's chronic back pain was "well controlled." (R.pp. 645-646, 648, 678, 698-701, 703, 705-706).

Despite the Record recited above, on June 19, 2008, Dr. LeBlond completed a questionnaire provided by Plaintiff's attorney in which he opined that Plaintiff's physical impairments rendered him incapable of performing full time work at even a sedentary level. Dr. LeBlond further stated in this questionnaire that Plaintiff's impairments had been disabling since May 2004 (a year before Plaintiff was first seen by Dr. LeBlond, and well before even Plaintiff claims he was disabled). When asked to "summerize all findings, results of lab tests, x-rays, etc., and diagnoses that support the above restrictions and limitations," Dr. LeBlond wrote "MRI lumbar spine - [illegible]. *See* (R.pp. 711-713). However, Plaintiff's last MRI, which was performed at Dr. LeBlond's request on May 7, 2005, showed only mild findings. (R.p. 598).

It is the opinion of this Court that the ALJ thoroughly reviewed the medical records and evidence in his decision, including Dr. LeBlond's own records; *see* (R.pp. 16-31); and found that these records did not support the degree of limitation and impairment opined to by Dr. LeBlond in his June 2008 opinion, specifically noting Dr. LeBlond's findings that Plaintiff's pain and neurologic and mental status had been stable; that Dr. LeBlond had himself frequently advised Plaintiff to pursue a home exercise program that included regular walking; and that Dr. LeBlond's opinion was not well supported by medically acceptable clinical and laboratory diagnostic techniques, including the results of his own physical examinations and x-ray and MRI findings. Therefore, the ALJ correcting found that Dr. LeBlond's opinion was inconsistent with the

other substantial evidence in the case record. (R.pp. 35-36). *See Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996) (rejecting the treating physician's opinion was justified where treating physician's opinion was inconsistent with substantial evidence of record); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (noting that it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence). Thus, this Court cannot and will not reverse the ALJ's consideration of Dr. LeBlond's opinion and engage in a reweighing of the evidence in the record. *Burch v. Apfel*, 9 Fed.Appx. 255 (4th Cir. 2001) (holding the ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes).

**B.     SSR 96-7p**

Plaintiff next contends that the ALJ did not properly assess his subjective complaints of pain in compliance with SSR 96-7p, which requires the ALJ to consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged, and consider and evaluate the intensity, persistence or functionally limiting effects of the pain Plaintiff suffers. *See* 20 C.F.R. § 416.929.(a). This Court finds this contention to be without merit.

The Record shows that he ALJ specifically found in his decision that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, and then spent several pages outlining how Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent alleged, noting such factors as Plaintiff's daily activities,

medications, treatment regimens, and objective medical findings. This analysis clearly satisfies the requirements of this SSR.

The ALJ concluded that Plaintiff retained the RFC to perform medium work, except that he could only occasionally climb ladders/ramps/stairs, but had no other postural limitations; that he should avoid concentrated exposure to hazards; has borderline intellectual functioning; could read at a third grade level, could handle only short and simple instructions; and could not have ongoing interaction with the public. (R.p. 33). In making this finding, the ALJ extensively reviewed the objective medical evidence of record (which included not only the physical limitations previously discussed, but also Plaintiff's allegations of a mental impairment), as well as Plaintiff's testimony regarding the extent of his pain and limitations. (R.pp. 34-36). These records include medical findings showing Plaintiff has normal strength with no muscle atrophy, that he has displayed pain behavior beyond what would be indicated by the objective evidence, and that he had provided inconsistent responses with respect to his alcohol and drug use. (R.pp. 34-37). *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints).

Based upon the entire Record, the ALJ concluded that Plaintiff's testimony was not credible to the extent claimed or to preclude him from work activity with these limitations, noting that Plaintiff drives an automobile, does his own grocery shopping, that his resort to medical treatment for his claimed conditions has been sporadic and inconsistent, and that Plaintiff's medical reports show that he engages in a range of daily

activities consistent with a capacity for medium exertion with the additional limitations noted, all of which are appropriately considered under SSR 96-7p. (R.pp. 34-36). Accordingly, the ALJ conducted a proper credibility analysis, and his decision otherwise reflects that he properly considered the record and evidence in this case.

### C.     SSR 96-8p

Plaintiff also argues the ALJ erred in failing to comply with the requirements of SSR 96-8p in reaching his decision. Under SSR 96-8p, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." The record shows that the ALJ complied with this SSR, as a plain reading of the ALJ's decision shows a thorough review and consideration of the evidence and the effects of all the Plaintiff's impairments in deciding his RFC. For example, the ALJ thoroughly discussed the medical records and findings of Plaintiff's physicians as well as Plaintiff's own testimony, noting the physical and mental findings as reflected in the medical evidence, the effectiveness of Plaintiff's treatments, and that his findings were based on the medical evidence and why. The ALJ outlined the medical evidence with respect to Plaintiff's physical limitations, noting where the objective medical evidence did not support the degree of limitation claimed, and that Plaintiff was even suspected of exaggerating his symptoms. The ALJ further specifically noted that his physical capacity findings (medium work with only occasionally climbing ladders/ramps/stairs) were based on the physical functional findings of the medical consultants, while Dr. LeBlond's records showed stable neurological findings and did not support any greater limitations. (R.pp. 33, 36). Hence, the ALJ's decision reflects that

the ALJ thoroughly discussed the medical records and findings of Plaintiff's physicians as well as Plaintiff's own testimony, noting the physical and mental findings as reflected in the medical evidence, the effectiveness. Such a review, discussion and analysis satisfies the requirements of SSR 96-8p.

## Conclusion

Accordingly, the denial of benefits is **affirmed** as outlined herein.

**AND IT IS SO ORDERED**.

Richard Mark Gergel
United States District Court Judge

April 11, 2011
Charleston, South Carolina